UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **WILBERT J. SAUCIER, JR.,** | **CIVIL ACTION NO. 14-3157** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.** | **MAG. JUDGE JOSEPH PEREZ-MONTES** |

**OPINION**

Plaintiff William J. Saucier, Jr. ("Saucier"), brought this personal injury lawsuit arising from a motor vehicle accident against Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively "State Farm").

A bench trial was held March 20-21, 2017. The parties made closing arguments, but waived the filing of post-trial briefs. The Court then took the matter under advisement.

**I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

**A.     FINDINGS OF FACT**

On September 5, 2013, at the intersection of La. Hwy. 28 and the U.S. 167 on-ramp in Pineville, Louisiana, a motor vehicle accident occurred between a 2005 Jaguar VDP automobile operated by Saucier and a 2005 Ford Taurus operated by Aleisha Tilley ("Tilley"). Just prior to the accident, Saucier was driving in a westerly direction in the left lane of Hwy. 28 traveling thirty to thirty-five miles per hour. Tilley was driving on Hwy. 28 in an easterly direction for approximately

two blocks before she merged into the left-hand turn lane to enter the U.S. 167 on-ramp.[1]

As Saucier's vehicle approached the intersection, Tilley's vehicle yielded at the yield sign at the median of the intersection between U.S. 167's on and off ramps and Hwy. 28. Tilley waited a short period of time for oncoming traffic traveling in a westerly direction on Hwy. 28 to pass. Tilley then began crossing Hwy. 28 before Saucier had safely proceeded through the intersection.

Saucier testified that he "stood on his brakes" in an attempt to avoid hitting Tilley's vehicle, but was unsuccessful. In the collision, the front of the vehicle operated by Saucier impacted the right rear fender of Tilley's vehicle. The damage to both vehicles was minor and no air bags deployed in either vehicle. Officer Sabrina Farace arrived on the scene and completed an accident report.

After the accident, Saucier traveled to his office and called Dr. Robert Rush, a general practitioner, to schedule an appointment. Dr. Rush was able to examine him later that day. Saucier relayed complaints of shoulder and neck pain, specifically that his right shoulder was "popping." Dr. Rush conducted an exam on Saucier's right shoulder and concluded he had a positive O'Brien maneuver test, which indicated Saucier may have a tissue tear in his shoulder.[2] Dr. Rush

---

[1] While Saucier testified that he witnessed Tilley's vehicle stop at the stop sign at the off-ramp of U.S. 167 and proceed across the easterly traveling lane of Hwy. 28, the Court credits Tilley's testimony that she was instead traveling from Hwy. 28 before entering the median.

[2] Defendants object that "[w]hile [Dr. Rush, Mr. Lavergne, and Dr. Savoie] have been disclosed, they have never submitted expert reports under Rule 26 or submitted the disclosure under Rule 26 (2)(C)(i) and (ii) and as such are limited to testimony as fact witnesses." [Doc. No. 123]. Rule 26(a)(2) requires a litigant to disclose the identity of its expert witnesses prior to trial, and, "if the witness is one retained or specially employed to provide expert testimony," this disclosure must be accompanied by a written report. FED. R. CIV. P. 26(a)(2)(A)-(B). However, Rule 26(a)(2)(C) makes clear that, for all expert witnesses from whom a written report is not required (which would include a plaintiff's treating healthcare providers), the litigant who seeks to use that expert's opinion testimony must nonetheless disclose to the other party "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to

recommended conservative treatment, which included a nonsteroidal inflammatory, a muscle relaxer, and physical therapy with Oday Laverge, P.T.

After a series of visits with Dr. Rush and physical therapy appointments with Mr. Laverge, Saucier continued to report pain in his neck and right shoulder and continued to have positive O'Brien maneuver tests.

On December 5, 2013, Dr. Rush ordered an MRI of Saucier's shoulder. The MRI revealed that the long head of Saucier's right bicep was torn. The MRI also revealed that Saucier had tendinosis of the supraspinatus and a tear of the subscapular part of the rotator cuff. After reviewing the MRI, Dr. Rush referred Saucier to Dr. Felix Savoie.

Dr. Savoie performed tests on Saucier and reviewed his MRI, concluding that they were consistent with a labral tear, a rotator cuff tear and a bicep injury. In February 2014, Dr. Savoie initially recommended surgery, but Saucier declined surgery at that time.

On September 23, 2014, Dr. Rush concluded that Saucier was at or near maximum medical

---

testify." FED. R. CIV. P. 26(a)(2)(C).

The Court notes that this case was referred to the undersigned on February 10, 2017. [Doc. No. 111]. Therefore, the parties were not under the undersigned's scheduling order which would normally provide,

> TREATING HEALTH CARE PROVIDERS. Treating health care providers are not considered experts under the Federal Rules of Civil Procedure and not subject to the provisions for experts in this Scheduling Order. However, the Court requires that reports of treating health care providers be furnished to opposing counsel immediately upon receipt.

The Court finds that while Saucier failed to provide "a summary of the facts and opinions to which the witness is expected to testify," Saucier did disclose the treating health care providers' reports to State Farm. Thus, State Farm was provided the information in substance of such summaries and were not significantly prejudiced enough to warrant restricting the testimony of Saucier's healthcare providers.

improvement, and it appeared that his shoulder would not regain its pre-accident status without surgical intervention. Saucier still elected to continue conservative treatment, rather than schedule surgery.

Saucier elected to wait until July 18, 2016 to have the surgery performed. Dr. Savoie testified that the delay in surgery caused the development of a partial tear in the supraspinatus tendon. However, Dr. Savoie also testified that continuing conservative treatment was an acceptable mode of treatment.

On October 2, 2012, prior to the September 5, 2013 motor vehicle accident, Saucier suffered an injury to his right shoulder as a result of pulling a water filter at his camp. Dr. Rush and Mr. Laverge testified that Saucier was prescribed physical therapy and subsequently discharged to at-home rehabilitation. Mr. Lavergne testified that the 2012 incident caused an AC joint strain, different from the injuries Saucier experienced after the 2013 motor vehicle accident. Also, Dr. Savoie testified that Saucier's present shoulder injuries were not consistent with the 2012 pulling incident.

Cynthia Vallery, Saucier's sister, and Nancy Stokes stayed with and cared for Saucier after surgery. During this time, Saucier was heavily medicated on pain medication and required assistance with daily activities. Additionally, Saucier, a avid sportsman, was unable to hunt and fish.

As a result of the accident, Saucier incurred $48,810.69 in medical bills and $3,320.40 in property damage. Dr. Lavergne testified that he expects Saucier to incur $7,200 in future medical expenses for physical therapy. Mr. Joseph Wayne Gaspard, Saucier's accountant, testified that Saucier's solo law practice generated $4,910,327[3] in the fiscal years 2010 through 2014.

---

[3]This figure does not include the income generated by Lauren Saucier as an associate for her father's law practice.

At the time of the collision, Saucier had in full force and effect a policy of uninsured/underinsured motorist coverage issued by State Farm Mutual Automobile Insurance Co., under policy number 600 1205-F18-18K, affording coverage to Saucier in the amount of $250,000.00 dollars, to the extent that Saucier's damages exceed the underlying coverage afforded by the Go Auto Insurance Company to Tilley. Saucier also had in full force and effect a policy of umbrella uninsured/underinsured motorist coverage issued by State Farm Fire and Casualty Company, under policy number 18-BA-7476-9, and affording coverage to Saucier in the amount of $2,000,000.00 dollars, to the extent that Saucier's damages exceed the underlying coverage afforded by the Go Auto Insurance Company to Tilley, and the underlying coverage afforded by Defendant, State Farm Mutual Automobile Insurance Co.

As a result of the auto accident, Saucier was paid $15,000.00 from Go Auto Insurance Company, as the insurer of Tilley, and paid $13,528.24 by State Farm Mutual Automobile Insurance Co. Saucier has received a total of $28,528.24 as a result of the accident to date. On March 10, 2014, Saucier filed the instant suit against State Farm in the 9th Judicial District court for the Rapides Parish, Louisiana. On October 31, 2014, State Farm removed this case on the basis of diversity of citizenship and an amount in controversy in excess of $75,000. *See* 28 U.S.C. §§ 1332, 1441(b).

    **B.**     **CONCLUSIONS OF LAW**

        **1.**     **Negligence**

This is a diversity action; therefore, Louisiana substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Saucier asserts that State Farm is liable to him under a theory of negligence. Under Louisiana law, "[e]very act whatever of man that causes damage to another obliges

him by whose fault it happened to repair it." LA. CIV. CODE ART. 2315.

Under Louisiana law, to obtain coverage under the uninsured motorist provision of a particular policy, the insured must establish that he is "legally entitled to recover" damages from the owner or operator of an uninsured or underinsured motor vehicle. *Hart v. Allstate Ins. Co.*, 437 So.2d 823, 828 (La. 1983) (citation omitted). In other words, the plaintiff must establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages. *Id.* (citation omitted). The insured must prove the extent of his loss and the cause of his loss by a preponderance of the evidence. *Rosen v. United Servs. Auto. Ass'n*, 104 So.3d 633, 639 (La. App. 4th Cir. 2012) (citations omitted).

Louisiana courts employ a duty-risk analysis of negligence claims. Saucier's personal injury claim in this case is based upon Tilley's alleged negligence. For liability to attach under the duty-risk analysis, Saucier must prove the following by a preponderance of the evidence: (1) Tilley had a duty to conform her conduct to a specific standard of care (the duty element); (2) Tilley failed to conform her conduct to the appropriate standard of care (breach of duty element); (3) Tilley's substandard conduct was a cause-in-fact of Saucier's injuries (the cause-in-fact element); (4) Tilley's substandard conduct was a legal cause of Saucier's injuries (the scope of protection element); and (5) actual damages (the damages element). *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)). All of these elements must be present to impose liability. *See Richard v. Swiber*, 98–1515 (La. App. 1 Cir. 9/24/99); 760 So.2d 355, 359.

    **2.**    **Fault**

A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty.

*Lemann*, 923 So. 2d at 633. The duty of a motorist when approaching a yield sign is mandated in LA. REV. STAT. ANN. § 32:123 which provides in pertinent part:

> A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
>
> . . .
>
> D. The driver or operator of a vehicle approaching a yield sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. Having slowed or stopped in this manner, the driver shall yield the right-of-way to any pedestrian legally crossing the roadway on which he is driving, and to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard.

LA. REV. STAT. ANN. § 32:123(A),(D) (2012). When a motorist is confronted with a [yield] sign legally located at an intersection, it is his duty to bring his vehicle to a complete stop, to appraise traffic in the intersecting street, and to make certain that the way is clear for him to make clear passage across the intersection before he enters it. *See Vallery v. State Through Dep't of Transp. & Dev.*, 480 So. 2d 818 (La. Ct. App. 1985), *writ denied*, 481 So. 2d 1350 (La. 1986); *Coleman v. Rabon*, 561 So. 2d 897, 900 (La. App. 2d Ct.), *writ denied*, 567 So. 2d 617 (La. 1990).

It is undisputed in this case that Tilley had a duty to yield to the traffic traveling west on Hwy. 28. However, State Farm claims that Saucier should be assessed comparative fault. Louisiana Civil Code Article 2323 specifically provides, in pertinent part, that "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined . . . ." "Preferences on favored streets created by statutes, signal, or signs, do not relieve the driver traveling on the favored street from

7

ordinary care." *Este v. Roussel*, 01–1859, p. 12 (La. App. 4 Cir. 11/6/02), 833 So.2d 999, 1007–08 (citing *Kirk v. Allstate Ins. Co.*, 366 So.2d 642, 644 (La. App. 3rd Cir. 1978)). "'[T]he favored driver can still be found contributorily negligent [assessed comparative fault] if his/her substandard conduct contributed to the cause of the accident." *Thomasie v. Lee*, 97–397, p. 8 (La. App. 5 Cir. 9/30/97), 700 So.2d 580, 584.

Having heard all testimony in this matter, the Court finds that Saucier was traveling on the favored roadway, had the right of way, exercised ordinary care, and that Tilley failed to make certain that the way was clear for her to make passage across the intersection. Therefore, Tilley breached the duty owed to Saucier when she did not make clear passage across the intersection, and Saucier has no comparative fault.

### 3. Causation

Saucier must also prove a causal relationship between his injuries and the accident that caused his injuries by a preponderance of the evidence. *Marato v. Goodyear Tire & Rubber Co.*, 650 So.2d 757, 759 (La. 1995). "The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident." *Id.*; *see also Oubre v. Union Carbide Corp.*, 747 So.2d 212, 224 (La. 5 Cir. App. 1999) (noting that the plaintiff must prove the causal link by a preponderance of the evidence, and the test for determining whether the plaintiff has carried her burden is whether she proved through medical testimony that it is more likely than not that the injuries were caused by the accident).

Saucier presented sufficient evidence that the accident caused his shoulder injury, ultimately requiring surgery. Saucier saw Dr. Rush and Mr. Lavergne on the same day the accident occurred.

Dr. Rush's, Mr. Lavergne's, and Dr. Savoie's records indicated that Saucier was treated for the injury he sustained in the car accident from the date of the accident until present. Although State Farm theorized that Saucier's shoulder injury was caused by the 2012 incident at his camp, State Farm offered no evidence to support this theory. Dr. Rush, Dr. Savoie, and Mr. Laverge testified, and all agreed, that Saucier's September 2013 shoulder injury most likely occurred after a sudden deceleration mechanism, consistent with the deceleration of the motor vehicle accident described by Saucier, as opposed to the pulling mechanism involved in the 2012 shoulder injury. State Farm failed to provide any testimony or other evidence contradicting the testimony of Saucier's treating physicians and physical therapist. Therefore, the evidence shows that, more likely than not, the car accident caused Saucier's shoulder injury, for which he is entitled to recover damages.

### 4. Damages

A person injured through the fault of another is entitled to full indemnification for the damages caused thereby. LA. CIV. CODE ART. 2315; *State Farm Mut. Auto. Ins. Co. v. Berthelot*, 98–1011 (La.4/13/99), 732 So. 2d 1230; *Faulk v. Cagle Supply Inc.*, 412 So. 2d 1020 (La. 1982). Saucier contends that he is entitled to damages for (1) medical and related expenses, past and future; (2) mental anguish, past and future; (3) physical pain and suffering, past and future; (4) loss of enjoyment of life, past and future; and (5) loss of earning capacity. [Doc. No. 118, p. 2].

#### a. Mitigation

First, State Farm argues that Saucier failed to mitigate his damages by having surgery sooner. Dr. Savoie testified that Saucier's decision to delay surgery did cause additional damage to his shoulder. However, an injured plaintiff need only to take reasonable steps to mitigate his damages. *Aisole v. Dean*, 574 So.2d 1248 (La. 1991). The burden rests on the tortfeasor to show (1) that the

plaintiff's conduct after the injury was unreasonable and (2) that the unreasonable conduct had the consequence of aggravating the harm. *Hunt v. Long*, 33,395 (La. App. 2 Cir. 6/21/00), 763 So. 2d 811.

In this case, the uncontradicted medical testimony established that it was reasonable for Saucier to continue to attempt to treat his shoulder with conservative treatment, rather than elect to sustain the extensive risks of surgery. Dr. Rush estimated that conservative treatment, without the use of surgery, is successful in 3/4 of patients with similar injuries. Dr. Savoie testified that 2/3 of the labral tears, in his experience, recover without surgery. Therefore, while Saucier's decision to delay surgery aggravated his harm, State Farm has failed to prove that his conduct in continuing conservative treatment was unreasonable. State Farm has not proved Saucier failed to mitigate his damages.

### b. Future Medical Expenses

Special damages are those which must either be pled or have a "ready market value," i.e., the amount of the damages can be determined with relative certainty, such as the plaintiff's medical expenses. *Wainwright v. Fontenot*, 00–0492 (La.10/19/00), 774 So. 2d 70.

In order to justify an award of future medical expenses, there must be medical testimony indicating that future medical expenses will be necessary and inevitable. *Goza v. Parish of West Baton Rouge*, 21 So.3d 320, 337 (La. App. 1 Cir. 2009). Here, Mr. Lavergne testified that he expected Saucier to incur $7,200 in office visits for physical therapy, over a 24-week period.

### c. Loss of Future Earning Capacity

Awards for loss of future earning capacity are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. *Lemings v. Sanasac*, 2016-0052 (La.

App. 1 Cir. 12/22/16), 209 So. 3d 396, 399. Nevertheless, a projection of loss of future earning capacity must have a factual basis in the record, and an award may not be based upon speculation, possibility, or conjecture. *Id.*; *see also Jenkins v. State ex rel. Dept. of Transp. and Dev.*, 06–1804 (La. App. 1 Cir. 8/19/08), 993 So.2d 749, 775, *writ denied*, 08–2471 (La. 12/19/08), 996 So.2d 1133; *see also Doss v. Second Chance Body Armor, Inc.*, 34,788 (La. App. 2 Cir. 8/22/01), 794 So. 2d 97, 101("Purely conjectural or uncertain future lost earnings will not be allowed.").

A forensic economist is generally necessary to make those calculations necessary to establish a loss of earning capacity claim. *See Rogers v. State ex rel. Dept. of Transp. And Development*, 00-1424, (La. App. 4 Cir. 3/7/02), 813 So.2d 495, 506. The testimony of an economist is entitled to great weight, but since it is necessarily based on uncertain future events, it is not conclusive. *Doss*, 794 So. 2d at 102; *Cutchall v. Great American Pump Co.*, 460 So.2d 1106 (La. App. 2d Cir.1984). Uncontradicted expert testimony is not binding on the fact finder, but such testimony should be accepted as true in the absence of circumstances in the record that cast suspicion on the reliability of that testimony. *Arnold v. Town of Ball*, 94–972 (La. App. 3 Cir. 2/1/95); 651 So.2d 313. "While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity." *Batiste v. New Hampshire Ins.*, Co, 94–1467, p. 3–4 (La. App. 3 Cir. 5/3/95), 657 So.2d 168, 170, *writ denied*, 95–1413 (la.9/22/95), 660 So.2d 472. A plaintiff bears the burden of proving his claim for lost of future earnings. *Davis v. Foremost Dairies*, 45,835 (La. App. 2 Cir. 2/16/11), 58 So. 3d 977, 991, *writ denied*, 2011-0568 (La. 4/25/11), 62 So. 3d 97.

Saucier's sole evidence for a loss of earning capacity claim was Mr. Gaspard's testimony that Saucier's solo law practice generated $4,910,327.00 in 2010 through 2014. However, State Farm's

expert, Jason MacMorran, testified that taking the raw income generated by the firm and determining an average was too speculative, due to the volatile nature of a plaintiff's attorney contingent fee revenue model. Mr. MacMorran testified that the industry's accepted methodology for determining economic damages of a contingency fee professional service practice relies on variables such as case volumes, duration of how long the cases take, and settlement amounts in order to determine a lost revenue model. None of this information was provided. Saucier's evidence on loss of earning capacity relies too heavily on possibility and speculation. Therefore, the Court finds that Saucier's evidence is insufficient to prove his loss of earning capacity claim.

###     d.    General Damages

General damages are those which may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitively measured in monetary terms. *Anderson v. Bennett Wood Fabricators*, 571 So.2d 780 (La. App. 2d Cir.1990), *writ denied*, 573 So.2d 1135 (La. 1991). The primary objective of general damages is to restore the party in as near a fashion as possible to the state he was in at the time immediately preceding injury. *Daigle v. United States Fidelity and Guaranty Insurance Company*, 94 0304 (La. App. 1st Cir. 5/5/95), 655 So.2d 431.

In comparable cases, awards for general damages for similar injuries ranged from $35,000–$85,000. *See Pierce v. Milford*, 688 So.2d 1093, 1094–95 (La. App. 3 Cir. 9/25/96) (general damages of $76,000 due to neck, back and shoulder injuries where shoulder required arthroscopic surgery); *Butcher v. Mount Airy Ins. Co.*, 99–103 (La. App. 3 Cir. 6/2/99), 741 So.2d 745 ($75,000 general damages for a torn rotator cuff which required surgery sustained in an automobile accident

by a fifty-five year old); *Ezernack v. Progressive Sec. Ins. Co.*, 899 So.2d 870, 871 (La. App. 3 Cir. 4/6/05) (general damages award of $65,000 for torn rotator cuff injury to shoulder that necessitated arthroscopic surgery); *Ibrahim v. Hawkins*, 845 So.2d 471, 475 (La. App. 1 Cir. 2/14/03) (trial court determination of $50,000 in damages attributable to shoulder injury requiring arthroscopic surgery); *Rayburn v. Ponthieux*, 2004–1547 (La. App. 3 Cir. 5/4/05), 902 So.2d 1136 ($85,000 general damages for a permanent shoulder injury sustained in an automobile accident by an eighty-three year old); *White v. Longanecker*, 93–1122 (La. App. 1st Cir. 5/23/94), 637 So.2d 1213, *writ denied* 94–1704 (La.10/7/94), 644 So.2d 640 ($35,000 for shoulder injury requiring surgery and other injuries); *Notto v. Brown*, 525 So.2d 251 (La. App. 1st Cir. 1988) ($68,697.74 for shoulder injury with surgery); *Waterman v. Colonial Penn Insurance Company*, 95–1578 (La. App. 4th Cir. 12/28/95), 666 So.2d 699 ($42,500 for shoulder injury with surgery although rotator cuff tear was not found).

Based on the facts and circumstances of this case, the Court awards $75,000 for general damages.

Therefore, having carefully considered the evidence and the medical testimony, the Court finds Saucier is entitled to recover damages in the following amounts:

| | |
|---|---|
| Past medical expenses | $48,810.69 |
| Future Medical Expenses | $7,200 |
| General Damages[4] | $75,000 |
| Loss of Earning Capacity | $0 |

---

[4] Includes past and future (1) mental anguish, (2) physical pain and suffering, and (3) loss of enjoyment of life.

Total $131,010.69

In addition, Saucier is entitled to recover all taxable costs of court and post-judgment interest as allowed by law.

Saucier has been paid $15,000 by Go Auto Insurance Company, as the insurer of Tilley, and $13,528.24 by Defendant State Farm Mutual Automobile Insurance Co., for a total of $28,528.24. After reducing his award for payments already made,[5] Saucier is awarded $105,802.85 in total damages.

## CONCLUSION

For the reasons set forth above, Judgment will be entered in favor of Saucier and against State Farm in the amount of $105,802.85, plus all taxable costs of court and post-judgment interest as allowed by law.

MONROE, LOUISIANA, this 6th day of April, 2017.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[5] The total amount paid by the two insurers prior to trial included $3,320.40 for property damage to Saucier's vehicle. The Court's reduction of Saucier's damage award does not include this amount.